HALL, Judge.
Plaintiff, claiming to be totally disabled from injuries which he received in an accident which occurred on January 28, 1960 filed this suit on January 27, 1961 against his employer’s insurer for maximum benefits under the Louisiana Workmen’s Compensation Statute.
The suit was tried in February 1963 and resulted in a judgment for the defendant, dismissing plaintiff’s suit. Plaintiff appealed.
The District Judge found that plaintiff was totally and permanently disabled as of the time of the trial but held that plaintiff’s disability stemmed from arteriosclerosis and that the evidence was insufficient to show that his inability to work was a result of the accident.
The sole question presented on this appeal is whether plaintiff has proved that his present inability to work was caused by injuries received in the accident.
The only significant injury which plaintiff received was a blow to the head when a truck in which he was riding went out of control and crashed into an abutment of the Harvey Canal Tunnel. Plaintiff’s head struck the top of the truck’s cab rendering him momentarily unconscious.
Plaintiff received treatment at the expense of the defendant insurer and was paid compensation at the maximum rate from *849 the date of the accident until March 7, 1960 when he returned to work, resuming his usual job as a laborer “handy man” assisting a pile driving crew. Thereafter he performed the identical duties and received the same pay that he did before the accident until September 1, 1961. The record shows that he performed these duties as well after the accident as he did before.
Between March of 1960 and September 1961, a period of eighteen months, plaintiff worked steadily with little complaint except for headaches and trouble with his eyes. These complaints started about two months after his return to work and seemed to his foreman to grow progressively worse but had no effect on his work. His foreman also noticed that plaintiff’s memory began to fail him.
At the time of the trial in February 1963 plaintiff testified that he was suffering from severe pains about the head and eyes; he stated that he had queer feelings in his head and that his vision was defective and that he was unable to perform any manual labor. He also testified that on the last day he worked he was ordered by his foreman to lift a heavy object and when he did “something pulled loose in his forehead.” He then was forced to rest against a fence and later went to a doctor who told him he could not work any longer.
Plaintiff placed two medical witnesses on the stand and introduced the reports of two others. Dr. A. J. Hackett, Jr., a general practitioner, testified that as plaintiff’s treating physician he was of the opinion that plaintiff was suffering from a post traumatic concussion syndrome caused by the accident of which plaintiff complains. However, on cross-examination Dr. Black-ett admitted that plaintiff’s most serious trouble was due to organic brain changes and that these changes could have been caused by the development of cerebral arteriosclerosis.
Dr. Hackett had plaintiff examined by Dr. Max Johnson, a specialist in neurology and Dr. Robert F. Azar, an ophthalmologist.
Three written reports by Dr. Johnson were admitted in evidence. He also testified as a witness for plaintiff. In his first written report Dr. Johnson stated that his impression was that plaintiff suffered a post traumatic syndrome as ,a result of the accident. However, in a supplemental report he made the following statement:
“There has apparently been some improvement as far as the headaches go, but continued difficulty in the area of personality change with some indications of a depressive reaction and others suggesting persisting effect of organic brain changes.” (Emphasis added)
When questioned on cross-examination about the statement Dr. Johnson said that these changes could have been caused as a result of the accident, but admitted that it was possible for them to have been caused by arteriosclerosis. He testified that “most of the clinical picture he presented could he caused by that.”
The report of Dr. Robert F. Azar, the ophthalmologist, was introduced in evidence without objection. He found that plaintiff needed glasses but could find no loss or disturbance of vision nor any facial deformity resulting from the accident.
The report of Dr. H.'Tharp Posey, a neuro-psychiatrist, who examined plaintiff at the request of plaintiff’s attorney, was also introduced in evidence. The gist of his report was that he “found no evidence of residual damage from the truck accident of 28 January 60.”
The medical evidence adduced by the defendant consisted of the testimony of Dr. Richard A. Levy, a neuro-surgeon and Dr. Sam Nadler, a specialist in internal medicine.
Dr. Levy testified that he examined the plaintiff on May 27, 1960, December 27, 1961, September 11, 1962 and January 21, 1963. On his first examination Dr. Levy made a diagnosis of “possible mild concussion” but this was solely because the plain *850 tiff had reported to him that he had been struck on the head and dazed. However, this first examination failed to reveal any evidence of injury. On the second examination plaintiff had new complaints, to wit: headaches and “swimming in the head” which the doctor concluded were not caused by plaintiff’s accident but by high blood pressure, which at that time was 190/110. Dr. Levy testified that at no time was there any evidence of injury or disease attributable to the accident of January 1960, and that all of plaintiff’s complaints were related to the high blood pressure. He suggested an examination by an internist, and referred him to Dr. Nadler.
Dr. Nadler, the internist, testified that he found the plaintiff to have an enlarged heart, an abnormal electrocardiogram, and serious high blood pressure or hypertension. He also found that plaintiff had arterio-sclerotic changes in the small arteries at the back of his eyes. Dr. Nadler testified that the plaintiff was suffering from serious degenerative changes in the blood vessels, and that this degeneration was more pronounced in those blood vessels supplying the brain. His opinion was that plaintiff’s condition was the result of cerebral arteriosclerosis which causes an insufficient circulation to the brain.and that the arteriosclerosis was rendered more serious by hypertension. Dr. Nadler testified that none of plaintiff’s ailments were caused or aggravated by trauma, and that there is no connection between the mild concussion which plaintiff received in the accident of January 1960 and his present condition.
Considering all of the testimony it is evident to us that plaintiff’s inability to work is due to the development of cerebral arteriosclerosis. Plaintiff’s expert, Dr. Po-sey, found no evidence of damage attributable to the accident. While Drs. Hackett and Johnson were of the opinion that plaintiff’s condition resulted from the mild concussion he received in the accident they would not deny, but readily admitted, that the cause could be arteriosclerosis. In contrast we have the positive testimony of defendant’s medical experts who stated with equivocation that plaintiff’s disability is due to natural degenerative changes in his body entirely unconnected with the accident. This testimony finds strong support in the fact that after the accident plaintiff worked steadily for eighteen months without difficulty.
We find no error in the District Court’s opinion that plaintiff has failed to sustain the burden of proving a causal connection between the accident and his inability to work.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.